IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PENNY MARIE LONG HAYWARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 3:15-CV-01325-JO |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner of ) | OPINION AND ORDER |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

JONES, J.,

Plaintiff Penny Hayward appeals the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Hayward alleged disability beginning December 30, 2000, due to pancreatitis, osteoporosis, osteoarthritis, chronic obstructive pulmonary disease ("COPD"), nerve problems, back problems, anxiety, and problems with memory and learning. Admin. R. 19, 152, 184. The ALJ correctly found that Hayward satisfied the insured status requirements of the Social Security Act through March 31, 2009. Admin. R. 19. Hayward must establish disability on or before that date to prevail on her

1 - OPINION AND ORDER

claim. 42 U.S.C.§ 423(a)(1)(A); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). Accordingly, the relevant period for Hayward's claim runs from December 30, 2000 through March 31, 2009.

The ALJ applied the five-step sequential evaluation process required by 20 CFR 404.1520(a) in order to determine whether Hayward was disabled during the relevant time. Admin. R. 19-21. *See Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). At step two of the evaluation, the ALJ determined that Hayward had the severe impairments of osetoarthrosis and related disorders, and opioid dependence. Admin. R. 22. The ALJ determined that pancreatitis did not adversely affect Hayward's ability to perform basic work activities and was not severe during the relevant time. Admin. R. 23. At step three of the evaluation, the ALJ determined that Hayward did not suffer from an impairment or combination of impairments that met the criteria for any of the presumptively disabling conditions listed in 20 CFR Part 404, Subpart P, Appendix 1. Admin. R. 25. The ALJ carefully considered Listing 5.08 and concluded Hayward's pancreatitis symptoms did not meet the criteria for weight loss due to any digestive disorder prior to her date last insured. Admin. R. 25.

The ALJ then found that, despite her impairments during the relevant time, Hayward retained the residual functional capacity ("RFC") to perform medium work if she could avoid concentrated exposure to fumes, odors, dusts, and gases. Admin. R. 26. The ALJ found that Hayward had past relevant work as a front desk clerk and as a kennel attendant and dog bather. Admin. R. 31. The ALJ compared Hayward's RFC with her description of her past work and determined that she could perform the front desk and kennel attendant/dog bather work as she had actually done it in the past. Admin. R. 32. In addition, the VE testified that a person with Hayward's RFC could perform these jobs as they are generally performed in the national economy. Admin. R. 31-32. Accordingly, at

step four of the disability determination process, the ALJ concluded that Hayward was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is such relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhard*, 433 F.3d 683, 686 (9th Cir. 2005); *See also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) ("Substantial evidence means more than a scintilla, but less than a preponderance.") (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## CLAIMS OF ERROR

The claimant bears the burden of showing that the ALJ erred and that any error was harmful. *McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011). Hayward contends the ALJ improperly concluded that her pancreatitis was not a severe impairment at step two of the evaluation process. She also contends the ALJ erred at step three by finding that her chronic pancreatitis did not meet the criteria for presumptive disability under Listing 5.08 in the Listing of Impairments. Finally, Hayward contends the ALJ improperly rejected the opinion of Scott Dunlap, M.D., which led her to reach an RFC assessment that did not accurately reflect all of Hayward's functional limitations.

## DISCUSSION

### I.  Step Two Severity Requirement

Step two of the evaluation is a *de minimis* screening process, at which point the ALJ determines whether the claimant has any medically determinable impairment or combination of impairments that adversely affect the ability to perform basic work activities. 20 CFR 404.1520(c); 20 CFR 404.1521. If the ALJ determines that the claimant has no such impairment, the claimant is not disabled within the meaning of the Social Security Act and the disability determination process ends at step two. Here, the ALJ determined that Hayward did meet the step two severity requirement because her osteoarthritis and opioid dependence limited her ability to perform basic work activities. Admin. R. 22. Thus, the ALJ resolved step two in Hayward's favor and properly continued to the remaining steps of the sequential decision-making process. Hayward, therefore, has failed to identify a harmful error at step two of the ALJ's decision. *See Burch v. Barnhart,* 400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting an impairment from the list of severe impairments at step two was harmless because step two was resolved in claimant's favor); *Lewis v. Astrue,* 498 F.3d 909 (9th Cir. 2007) (failure to list impairments as severe at step two was harmless because the limitations posed by the impairments were considered at step four).

### II.  Listing 5.08 Requirements

At step three, the claimant bears the burden of showing that her impairments satisfy the criteria for an impairment in the regulatory listings, so as to trigger a presumptive finding of disability. *Burch,* 400 F.3d at 682-83; *Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001). Hayward contends that the ALJ erred in finding that her chronic pancreatitis did not meet the criteria for Listing 5.08. Listing 5.08 requires the claimant to prove that she suffers "weight loss **due to any**

**digestive disorder** despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive six month period" (emphasis added). 20 CFR Pt. 404, Subpt. P, App. 1, § 5.08. Here, the ALJ found that Hayward had shown the requisite weight loss, but had failed to show that it was attributable to her pancreatitis or any other digestive disorder. Admin. R. 25. This court cannot reverse or modify the ALJ's finding unless the finding is not supported by substantial evidence or is based on legal error. *Burch v. Barnhart,* 400 F.3d at 679; *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989). If the evidence is susceptible to more than one rational interpretation, this court must uphold the ALJ's finding. *Andrews,* 53 F.3d at 1039-40.

In determining that Hayward's pancreatitis did not cause her weight loss, the ALJ relied on reports from doctors, who examined and treated Hayward, but could not identify the cause of her weight loss between 2006 and 2008. Admin. R. 25. Evidence of the ambiguous etiology of Hayward's weight loss persists throughout the record. For example, Dr. Sharon Kenny said the etiology was unclear when she examined Hayward in June 2007. Admin. R. 323. In February and June of 2008, two more doctors found "no evidence of chronic pancreatitis" and reported that it was "not clear" whether Hayward's chronic abdominal pain was due to her "pancreas (or not)". Admin. R. 283, 520. Objective medical test results did not suggest that chronic pancreatitis caused Haywood's pain and weight loss symptoms. For example, an abdominal CT scan performed in July 2008 showed no "pancreatic abnormalities ...to suggest gross pancreatitis". Admin. R. 360. The doctor's uncertainty regarding the etiology of Hayward's weight loss combined with the negative objective medical tests support the ALJ's conclusion that Hayward's pancreatitis did not cause her weight loss between 2006 and 2008.

5 - OPINION AND ORDER

The ALJ also considered medical records suggesting that opiate withdrawal contributed to Hayward's weight loss. Hayward has a well documented history of opiate drug abuse. Admin. R. 462. When Hayward was examined on January 11, 2006, the doctor noted she was suffering from "typical opiate withdrawal symptoms, including nausea, vomiting, anxiety, insomnia, arthralgia, pain" and a reported inability to eat. Admin. R. 462, 474. Her doctors remained aware of the possibility that opiate abuse may be causing Hayward's symptoms even after her release from detox. The day she was released, January 18, 2006, a doctor listed "addiction vs. anxiety vs. pancreatitis vs. eating disorder" as potential causes for her weight loss. Admin. R. 477 - 78. These reports and Hayward's history of addiction support the ALJ's conclusion that Hayward's weight loss was attributable to factors other than pancreatitis.

The ALJ also noted that Hayward's doctors considered nutritional deficits a contributor to her weight loss. Dr. Eileen Sparks assessed Hayward on July 15, 2008, and concluded that Hayward's "unintentional weight loss" resulted from "not eating adequate kcals for appropriate wt gain." Admin. R. 523. Notably, Hayward later *did* gain weight by increasing her caloric intake. Admin. R. 25, 332, 525-26. Thus, the evidence supports an inference that Hayward lost weight between 2006 and 2008 because she did not eat enough to sustain healthy weight and had addiction and withdrawal symptoms that exacerbated her difficulty eating.

In order for Hayward to have met the 5.08 listing criteria, her chronic pancreatitis or another digestive disorder must have caused her weight loss. The ALJ inferred that Hayward's weight loss was not attributable to a digestive disorder from the lack of objective medical evidence of active pancreatitis during the relevant time together with evidence that she lost weight due to poor diet,

addiction, and withdrawal symptoms. The ALJ's finding is supported by inferences reasonably drawn from the record and will not be disturbed. *Batson,* 359 F.3d at 1193.

## III. Dr. Dunlap's Opinion

Dr. Dunlap began treating Hayward on January 29, 2009, shortly before Hayward's insured status expired. In his progress notes, he said Hayward's pancreatitis was "not causing her a lot of pain." Admin. R. 526. In April 2011, two years after Hayward's insured status expired, Dr. Dunlap examined her for complaints of abdominal pain. Admin. R. 339-40. Then, in July 2013, four years after Hayward's insured status expired, Dr. Dunlap submitted the letter that is at issue here. Admin. R. 512.

In the letter, Dr. Dunlap said Hayward had diagnoses of COPD, pancreatitis, osteoporosis, and chronic pain syndrome. He acknowledged her history of opiate addiction with current methadone maintenance. He said that Hayward had been underweight since August 2008 and that a history of vertebrate fractures in the thoracic spine and pancreatitis probably caused her chronic pain. Dr. Dunlap opined that "the effects of her COPD alone would limit her endurance and ability to exert herself since 2008." Admin. R. 512. Ultimately, Dr. Dunlap opined that it would not be likely that Hayward would be able to "stand more than two hours in an eight hour day without sitting down or lying to rest" and that "she should not be asked to lift more than ten pounds more than four-five times per day." Admin. R. 512. Hayward contends the ALJ improperly rejected Dr. Dunlap's letter.

The ALJ gave "very little weight" to Dr. Dunlap's letter in reaching her decision. Admin. R. 29. The ALJ gave greater weight to the opinions of state agency medical consultants Sharon Eder, MD and Neal Berner, MD, who determined that there was "insufficient evidence" to rate Hayward's

7 - OPINION AND ORDER

physical functioning capabilities. Admin. R. 30, 80-86, 87-95. An ALJ may properly give diminished weight to the opinion of a treating physician that is controverted by other medical opinions by providing "specific and legitimate reasons...supported by substantial evidence in the record" for doing so. *See Windmark v. Barnhart,* 454 F.3d 1063, 1066-67 (9th Cir. 2006) (specific and legitimate standard applied even when the only contradictory medical opinion was the "brief and conclusory opinion of the state agency reviewing physician).

The ALJ pointed out that Dr. Dunlap relied on factual errors in forming his opinion. Admin. R. 29, 512. Dr. Dunlap incorrectly believed that Hayward had positive pulmonary tests for COPD in August 2008, but the test actually took place in August 2009, after Hayward's insured status expired. Admin. R. 29, 265, 512. Accordingly, Dr. Dunlap's opinion that Hayward's COPD would have limited her endurance and ability to exert herself "at least since 2008" is not supported by the objective medical evidence or any clinical findings. An ALJ need not accept the opinion of a treating physician that is brief, conclusory, and inadequately supported by clinical findings. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005); *Cotton v. Bowen,* 799 F.2d at 1403, 1408 (9th Cir. 1986).

The ALJ noted that Dr. Dunlap did not begin treating Hayward until the end of her period of insured status in early 2009. Admin. R. 29. Accordingly, Dr. Dunlap had very little first hand information about her ability to function during the period that is relevant for her claim. Under such circumstances, it is reasonable to infer that Dr. Dunlap relied primarily on Hayward's subjective statements to form his opinion about her functional limitations before he met her.

Dr. Dunlap also believed Hayward was "probably correct" when she said that "she had stopped working because she could not do a full day's work." Admin. R. 29, 512. The ALJ found

8 - OPINION AND ORDER

this showed that Dr. Dunlap relied on the unreliable statements of his patient. An ALJ is entitled to reject a treating physician's opinion that is premised primarily on subjective statements that the ALJ properly found unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144 at 1149 (9th cir 2001).

The ALJ pointed out that evidence in the record contradicted Dr. Dunlap's suggestion that Hayward had stopped working due to pain. Admin. R. 29. Hayward's employers submitted a letter in July 2013 stating that Hayward was let go from her position "due to conduct with clients." Admin. R. 258. The employers said that they did not keep records when employees called in sick, suggesting that lost work time likely did not contribute to Hayward's termination. Moreover, Hayward herself reported that "her employers were very supportive of her chronic pain and need sometimes to have lighter job duties or go home earlier." Admin. R. 315. She also stated around the same time that "obtaining employment had been one of the best tools to treat her chronic pain [and] that it provides a distraction for her. Admin. R. 323. Hayward's own statements and those of her employers therefore undermine the notion that she stopped working due to pain. When a claimant stops working for reasons unrelated to disability, it casts doubt on her claim that she cannot work due to disability. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Moreover, the ALJ noted that, during the relevant time period, substance abuse appeared to be the cause of Hayward's pain. The ALJ noted that "contemporaneous medical reports show [Hayward's] work absences were primarily related to opiate abuse and opiate withdrawal symptoms and her work ups for pancreatitis were negative." Admin. R. 29-30. For example, when Hayward complained of pain in 2007, her work-ups for pancreatitis all returned negative. Admin. R. 323. Then in January 2008 she reported that her "pancreatitis [had] been under good control." Admin. R. 325. In January 2008, Hayward struggled with withdrawal symptoms while trying to decrease

9 - OPINION AND ORDER

her methadone dosage on her own, which had an adverse impact on her ability to work. Admin. R. 325. Thus, Hayward's deviations from her opioid regimen and not her pancreatitis, appears to have been the cause of her pain. Accordingly, it is reasonable to infer that, even if pain contributed to Hayward's termination from work, opioid withdrawal symptoms caused the pain while her pancreatitis was under control and her COPD remained undiagnosed.

The ALJ provided specific and legitimate reasons based on substantial evidence in the record for affording Dr. Dunlap's opinion diminished weight in her analysis. Admin. R. 29-30. Accordingly, I find no error in the ALJ's evaluation of that evidence and it will not be disturbed. *Windmark v. Barnhart,* 454 F.3d at 1066-67.

## CONCLUSION

Based on the foregoing, Hayward's claims of error cannot be sustained. The Commissioner's decision is AFFIRMED.

DATED this 12th day of July, 2016.

Robert E. Jones, Senior Judge
United States District Court